Mohinani v Charney (2022 NY Slip Op 04782)

Mohinani v Charney

2022 NY Slip Op 04782

Decided on August 02, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 02, 2022

Before: Acosta, P.J., Renwick, Webber, Kern, Friedman, JJ. 

Index No. 653229/12 Appeal No. 15478 Case No. 2021-00595 

[*1]Harry Mohinani et al., Plaintiffs-Appellants,
v
Tzili Doron Charney as the Personal Representative of the Estate of Leon H. Charney et al., Defendants-Respondents.

Berry Law PLLC, New York (Eric W. Berry of counsel), for appellants.
Olshan Frome Wolsky LLP, New York (Thomas J. Fleming and Joseph B. Weiner of counsel), for respondents.

Order, Supreme Court, New York County (Jennifer G. Schecter, J.), entered on or about November 16, 2020, after a nonjury trial, which, to the extent appealed from as limited by the briefs, dismissed the breach of fiduciary duty claim with prejudice, unanimously affirmed, without costs.
As relevant to this appeal, plaintiffs assert a claim for breach of fiduciary duty against the estate of Leon H. Charney, based on Charney's alleged conduct with respect to a real estate joint venture that he organized and managed, in which plaintiffs were minority investors. Charney and plaintiffs were the sole members of defendant LHC Club LLC (LHC), in which Charney held the majority interest and of which he was manager. LHC, in turn, held a 30% interest in two limited liability companies (the LLCs) that owned and managed two adjoining real estate properties that were to be redeveloped. As clarified at trial and in their pre- and posttrial submissions to Supreme Court, plaintiffs claim that, at the March 2007 closing of the LLCs' acquisition of the properties, Charney breached his fiduciary duty to plaintiffs, as minority investors, by taking for himself (as plaintiffs allege) $1.5 million in "special distributions" from the LLCs and a $1 million "acquisition fee" that should have been received by LHC. Plaintiffs further contend that Charney further breached his fiduciary duty to them by obtaining payment from the LLCs to his management company of approximately $850,000 in management fees during the life of the project. The project ultimately failed, resulting in the loss of plaintiffs' $4.5 million capital investment.
While the trial court correctly acknowledged that Charney owed a fiduciary duty to plaintiffs (as this Court held on a prior appeal; see Mohinani v Charney, 156 AD3d 443, 444 [1st Dept 2017]), the court properly concluded that plaintiffs failed to establish a valid claim for breach of fiduciary duty against Charney at trial. Damages are "an essential element" (IDT Corp. v Morgan Stanley Dean Witter & Co., 12 NY3d 132, 140 [2009]) of a cause of action for breach of fiduciary duty (see also Besen v Farhadian, 195 AD3d 548, 549-550 [1st Dept 2021] ["To state a claim for breach of fiduciary duty, plaintiffs must allege that . . . they suffered damages caused by (the) misconduct"] [internal quotation marks omitted], quoting Burry v Madison Park Owner LLC, 84 AD3d 699, 699-700 [1st Dept 2011]). In this case, all of the damages plaintiffs sought to prove and to recover upon a theory of breach of fiduciary duty — the $1.5 million in special distributions and the $1 million acquisition fee that Charney (rather than LHC) allegedly received at the closing, and the $850,000 in management fees that his company allegedly thereafter received from the LLCs — would have been losses directly suffered by LHC (the special distributions and the acquisition fee) or by the LLCs (the management fees). Therefore, plaintiffs cannot validly assert a claim to recover such [*2]damages in their own names. Rather, as the trial court recognized, such claims must be asserted as derivative claims on behalf of LHC, or as double derivative claims on behalf of the LLCs (see e.g. Yudell v Gilbert, 99 AD3d 108, 113-114 [1st Dept 2012]; see also Serino v Lipper, 123 AD3d 34, 39-40 [1st Dept 2014]; Tooley v Donaldson, Lufkin & Jenrette, Inc., 845 A2d 1031, 1039 [Del 2004]). The fact that plaintiffs were the only other members of LHC does not obviate the requirement that a claim of misappropriation of funds owed to LHC be brought derivatively. Any injury is to LHC, and any damages must be recovered by LHC (see generally Glenn v Hoteltron Sys., 74 NY2d 386, 392 [1989]). For the same reasons, regarding the fee of $850,000 paid by the LLCs in which LHC had a partial stake, plaintiffs lack standing to bring a direct claim for any breach of fiduciary duty, as Charney did not directly owe plaintiffs any duty in connection with the charging or payment of those fees, and the claim must be brought as a double derivative claim.
We reject plaintiffs' argument that any defense based on the derivative nature of the claims at issue was waived because the defense of lack of standing was not raised under CPLR 3211(a)(3) in Charney's answer or by a pre-answer motion to dismiss (see CPLR 3211[e]). Throughout this decade-long litigation, through their posttrial submissions, plaintiffs consistently asserted these causes of action as direct claims on their own behalf, not as derivative or double-derivative claims. It is only now, upon appeal, after the trial court has dismissed the claims for lack of the element of an injury directly suffered by plaintiffs, that plaintiffs argue that they should be permitted to pursue the claims as derivative or double-derivative claims, and to amend their complaint accordingly. Indeed, when the court and defense counsel sought clarification of the nature of plaintiffs' claims in the months preceding trial, plaintiffs never moved to amend the complaint to plead derivative claims and argued only that Charney's duties to plaintiffs, rather than to LHC, were breached. Plaintiffs never sought leave to replead their claims as derivative claims and thus waived their argument that they should be able to do so now (OFSI Fund II, LLC v Canadian Imperial Bank of Commerce, 82 AD3d 537, 540 [1st Dept 2011], lv denied 17 NY3d 702 [2011]). We further note that, apart from the derivative nature of the claims, the record supports the trial court's finding that that the management fees paid by the LLCs to Charney's company were entirely proper, having been approved by the third parties holding a majority interest in the LLCs. The record also supports the trial court's finding that plaintiffs failed to prove that the alleged $1 million "acquisition fee" was ever paid.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 2, 2022